IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ARTHUR B. TOLENTINO; RICK V. PAULINO; JEANINE LUM in their capacities as the Union Trustees of the Hawaii Sheet Metal Workers Training Fund; and SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, LOCAL 203, ALF-CIO,<br><br>          Plaintiffs,<br><br><br>     vs.<br><br>PAUL SAITO; GLENN SAITO; SAM FUJIKAWA; and KEVIN HIRAYAMA, in their capacities as the Employer Trustees of the Hawaii Sheet Metal Workers Training Fund; and SHEET METAL CONTRACTORS ASSOCIATION,<br><br>          Defendants.<br>_____ | Civil NO. 23-00280 SOM-KJM<br><br>ORDER DENYING MOTION TO DISMISS COMPLAINT OR FOR A MORE DEFINITE STATEMENT |

**ORDER DENYING MOTION TO DISMISS COMPLAINT
OR FOR A MORE DEFINITE STATEMENT**

I.        **INTRODUCTION.**

As an offshoot of a collective bargaining agreement, an association of employers agreed with a union that each side would select trustees to manage a training fund to train union members. The number of employer trustees was the same as the number of union trustees. The document establishing the training fund set forth a procedure for settling matters on which the trustees were deadlocked. Under that procedure, when "the number of votes on

any matter is deadlocked, the matter may be submitted to an impartial umpire mutually agreed upon by the Union and Association." If the parties cannot agree on an umpire, the umpire is to be selected by the chief judge of this court.

After what the union says was a deadlocked vote, the union trustees and the union sought arbitration of the matter. The employer trustees and the association of employers they represent are refusing to participate in arbitration. The union trustees and the union therefore filed this action to compel arbitration. The employer trustees and the association of employers have moved to dismiss, arguing that this court lacks subject matter jurisdiction and that the Complaint fails to state a claim because the use of the word "may" indicates that arbitration is only permitted, not required.

This court reads the Complaint as asserting colorable, nonfrivolous claims under the Employee Retirement Income Security Act ("ERISA") and the Labor Management Relations Act ("LMRA"). While this court is not ruling that those claims succeed, the claims suffice to support this court's exercise of jurisdiction. Defendants fail to establish that the Complaint should be dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Additionally, the court denies the motion to dismiss based on an alleged failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, ruling that Defendants

fail to demonstrate that the use of the word "may" makes arbitration optional and creates no arbitration agreement enforceable under the Federal Arbitration Act ("FAA").

II.      **BACKGROUND**.

        According to its website, Defendant Sheet Metal Contractors Association ("Association") is a statewide trade association that represents management with respect to labor relations with unionized sheet metal and air conditioning contractors.  *See* https://smacnahawaii.org/home (last visited October 25, 2023).  Plaintiff Sheet Metal Workers International Association, Local 293, AFL-CIO ("Union"), is one of those unions.  There is no dispute that, under a collective bargaining agreement ("CBA"), a Training Fund has been established.  It is managed by trustees appointed by the Association and the Union.  The Training Fund provides vocational training to its beneficiaries.  *See* Complaint ¶ 7, ECF No. 1, PageID # 3; Labor & Management Agreement, ECF No. 32-3, PageID #s 129-30 (agreeing to continue the existing Training Fund managed by a board of trustees).

        The Association's trustees are Defendants Paul Saito, Glenn Saito, Sam Fujikawa, and Kevin Hirayama ("Association Trustees").  The Union's trustees are Plaintiffs Arthur B. Tolentino, Rick V. Paulino, Jeanine Lum, and nonparty Marc Rifkind ("Union Trustees").

On May 25, 2023, a Union Trustee moved to allow the Training Fund (1) to purchase a laser welding machine for $3,020 (the balance owed after use of grant funds); and (2) to send two people to Las Vegas for laser welding training for $4,250. *See* Complaint ¶ 17, ECF No. 1, PageID #s 5-6. All of the Association Trustees voted against the motion, and all of the Union Trustees voted for the motion, creating a deadlock. *See id.* ¶ 18, PageID # 6.

The document governing the trustees of the Training Fund has a provision regarding deadlocked votes:

> Section 6. Voting Deadlocked. If the number of votes on any matter is deadlocked, the matter may be submitted to an impartial umpire mutually agreed upon by the Union and the Association. If the Union and Association cannot agree upon the selection of a person as an impartial umpire, then the impartial umpire shall be selected by the chief judge of the United States District Court of Hawaii.

Complaint ¶ 7, ECF No. 1, PageID # 3; Restated Agreement and Declaration of Trust Establishing the Sheet Metal Workers Health and Welfare Fund, ECF No. 25.

This provision for breaking a deadlock appears to be based on § 302(c) of the LMRA, *see* ECF No. 32, PageID #s 120-21, which restricts certain financial transactions between management (i.e., employers, associations of employers, and persons acting on their behalf) and labor (i.e., representatives of employees, labor organizations, and employees). An exception to this

4

prohibition involves

> money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents): ***Provided***, . . . **(B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund,** together with such neutral persons as the representatives of the employers and the representatives of employees may agree upon **and in the event the employer and employee groups deadlock on the administration of such fund** and there are no neutral persons empowered to break such deadlock, **such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute, or in event of their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office** . . . .[1]

29 U.S.C. § 186 (c)(5) (emphasis added).

---

[1]The reference to petitioning the district court was not included in the language in issue in this case.  Section 6 of the document governing the Training Fund says that if the parties cannot agree on an impartial umpire, the umpire "shall be selected by the chief judge of the United States District Court of Hawaii."  The parties thus appear to have empowered themselves to give the chief judge a task without that individual's knowledge.

III.        **THIS COURT HAS SUBJECT MATTER JURISDICTION WITH RESPECT TO PLAINTIFFS' COMPLAINT.**

      **A.    Rule 12(b)(1) Governs Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction.**

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, Defendants seek dismissal for lack of subject matter jurisdiction.  Under that rule, an attack on subject matter jurisdiction "may be facial or factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  A facial attack asserts that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  *Id.*  A factual attack, on the other hand, "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Id.*

If the moving party makes a facial challenge, the court's inquiry is "confin[ed] . . . to allegations in the complaint."  *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).  Those allegations are taken by the court as true.  *See Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 (9th Cir. 2014).  On the other hand, if the moving party makes a factual challenge, the court may consider evidence beyond the complaint and "need not presume the truthfulness of the plaintiff's allegations."  *Safe Air*, 373 F.3d at 1039.  "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly

brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* (quoting Savage, 343 F.3d at 1039 n.2) (internal quotation marks omitted).

Here, although the facts are not in dispute, Defendants bring a "factual challenge" to this court's jurisdiction, as they submit evidence to supplement the allegations contained in the Complaint.  Even if the court disregarded that evidence and examined only the allegations of the Complaint, the court's analysis would be unchanged.

Plaintiffs' Complaint asserts claims under the FAA, ERISA, and the LMRA.  Defendants' motion fails to establish that this court lacks jurisdiction under ERISA and the LMRA.

> **B.   The Federal Arbitration Act Does Not Provide This Court With Subject Matter Jurisdiction With Respect to the Complaint.**

The FAA "governs the enforceability of arbitration agreements in contracts involving interstate commerce." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013). Under the FAA, private agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA, however, does not supply this court with federal question jurisdiction. *See Hall St. Assocs., L.L.C. v. Mattel,*

*Inc.*, 552 U.S. 576, 581–82 (2008) ("As for jurisdiction over controversies touching arbitration, the Act does nothing, being something of an anomaly in the field of federal-court jurisdiction in bestowing no federal jurisdiction but rather requiring an independent jurisdictional basis." (quotation marks and citation omitted)).  Cases asserting rights under the FAA must therefore have an independent basis for subject matter jurisdiction, such as diversity of citizenship or a federal question.  *See General Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 970-71 (9th Cir. 1981) ("Courts have consistently held that actions brought under the Federal Arbitration Act require an independent jurisdictional basis . . . .  Since GAC has alleged no independent grounds to justify an exercise of federal jurisdiction in the instant application, that is, diversity of citizenship or a federal question other than the enforcement of the arbitration agreement, this court has no subject matter jurisdiction to confirm the awards in question").

     The Complaint does not establish diversity jurisdiction, as all of the individual Plaintiffs and Defendants appear to be citizens of Hawaii.  *See* Complaint ¶¶ 4 and 6, ECF No. 1, PageID # 3 (not speaking to citizenship but alleging that all of the individual Plaintiffs and Defendants "reside" in Hawaii); 28 U.S.C. § 1332(a)(1) (providing that diversity jurisdiction exists when an action is between "citizens of

different States").

The allegations of the Complaint, as discussed further below, establish federal question jurisdiction. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the Unites States."). The Complaint alleges that this court has subject matter jurisdiction under §§ 502(e) and (f) of ERISA, 29 U.S.C. §§ 1132(e) and (f), and under § 301 of the LMRA, 29 U.S.C. § 185(a). *See* Complaint ¶ 8, ECF No. 1, PageID # 4.

### C. ERISA Provides This Court With Subject Matter Jurisdiction.

In Article XXI of the CBA, the Association and the Union agree to continue the existing Hawaii Sheet Metal Workers Training Fund. *See* ECF No. 32-3, PageID # 130. It states, "The Board of Trustees will manage the Training Fund on behalf of employees of all employers who have an agreement with the Union." *Id.*

ERISA defines "plan" as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." 29 U.S.C. § 1002(3). The Complaint alleges that the Trustees of the Training Fund are fiduciaries under ERISA, 29 U.S.C. § 1002(21)(a), which defines "fiduciaries" with respect to a plan. At the hearing on the present motion, Defendants

indicated that they were not prepared to address whether the Training Fund qualified as part of a "plan" for purposes of ERISA.  In other words, based on the record presently before the court, there is at least a question as to whether the Training Fund qualifies as a "plan" for purposes of ERISA.  While the existence of such a question does not on its own render the Training Fund an ERISA plan, Defendants' uncertainty at the very least means that Plaintiffs' claim that ERISA applies cannot be disregarded as frivolous.

The Complaint alleges that this court has subject matter jurisdiction under §§ 502(e) and (f) of ERISA, 29 U.S.C. §§ 1132(e) and (f).  Under § 1132(e), "district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter [29 U.S.C. §§ 1001-1191c] brought by . . . a . . . fiduciary."  Under § 1132(f), the "district courts of the United States shall have jurisdiction without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided in subsection (a) of this section in any action."

Under § 1132(a)(2), a fiduciary may bring a civil action "for appropriate relief under section 1109 of this title," which pertains to breaches of fiduciary duties of people who are fiduciaries with respect to a plan.  Here, no breach of fiduciary duty is alleged.

10

Under § 1132(a)(3), a fiduciary may bring a civil action to enjoin any act that violates a plan, but no such violation is alleged.  Alternatively, a fiduciary may seek equitable relief "to enforce . . . the terms of the plan."  This appears to be what the Union Trustees are attempting to do in the Complaint.  The record currently before this court does not establish that this claim is frivolous.

A colorable, nonfrivolous claim to enforce terms of a "plan" supports an exercise of subject matter jurisdiction.  The Supreme Court has explained:

> It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the courts' statutory or constitutional power to adjudicate the case.  *See generally* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350, p. 196, n.8 and cases cited (2d ed.1990).  As we stated in *Bell v. Hood*, 327 U.S. 678, 682, 66 S. Ct. 773, 776, 90 L. Ed. 939 (1946), "[j]urisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover."  Rather, the district court has jurisdiction if "the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another," *id.*, at 685, 66 S. Ct., at 777, unless the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous."  *Id.*, at 682-683, 66 S. Ct., at 776; *see also Bray v. Alexandria Women's Health Clinic*, 506 U.S.

> 263, 285, 113 S. Ct. 753, 767-768, 122
> L.Ed.2d 34 (1993); *The Fair v. Kohler Die &
> Specialty Co.*, 228 U.S. 22, 25, 33 S. Ct.
> 410, 411-412, 57 L. Ed. 716 (1913).
> Dismissal for lack of subject-matter
> jurisdiction because of the inadequacy of the
> federal claim is proper only when the claim
> is "so insubstantial, implausible, foreclosed
> by prior decisions of this Court, or
> otherwise completely devoid of merit as not
> to involve a federal controversy." *Oneida
> Indian Nation of N.Y. v. County of Oneida*,
> 414 U.S. 661, 666, 94 S. Ct. 772, 777, 39 L.
> Ed.2d 73 (1974); *see also  Romero v.
> International Terminal Operating Co.*, 358
> U.S. 354, 359, 79 S. Ct. 468, 473, 3 L. Ed.
> 2d 368 (1959).

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998).

Thus, the Ninth Circuit has stated, "[A] federal court may dismiss a federal question claim for lack of subject matter jurisdiction only if: (1) 'the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction'; or (2) 'such a claim is wholly insubstantial and frivolous.'" *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 (9th Cir. 2012) (*quoting Bell v. Hood*, 327 U.S. 678, 682-83 (1946)).

"Any non-frivolous assertion of a federal claim suffices to establish federal question jurisdiction, even if that claim is later dismissed on the merits." *Cook Inlet Region, Inc. v. Rude*, 690 F.3d 1127, 1131 (9th Cir. 2012) (quotation marks and citation omitted).  Plaintiffs' colorable, nonfrivolous claim to

enforce the terms of a "plan" under ERISA is sufficient to support this court's subject matter jurisdiction, even if it later turns out that the claim fails on the merits.

### D. The Court Also Has Jurisdiction Under the LMRA.

In this case, even if ERISA does not confer jurisdiction, the LMRA does.  Under § 301 of the LMRA, 29 U.S.C. § 185(a), "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."  This section is not simply a jurisdictional statute.  The Supreme Court has held that section 301 should be understood as a "congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985).  To that end, courts have held that federal common law preempts the use of state contract law in CBA interpretation and enforcement.  *See Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016); *see also Cramer v. Consol. Freightways Inc.*, 255 F.3d 683, 693 (9th Cir. 2001), as amended (Aug. 27, 2001) (holding that a state law claim is preempted under § 301 when "it

13

necessarily requires the court to interpret an existing provision of a CBA that can reasonably be said to be relevant to the resolution of the dispute.").  "Once preempted, any claim purportedly based on a state law is considered, from its inception, a federal claim, and therefore arises under federal law."  *Id.* (quotation marks, alterations, and citations omitted).

In seeking dismissal with respect to the LMRA, Defendants present almost no analysis.  They simply argue that the LMRA is inapplicable because this is a dispute between trustees and not a dispute involving employers and a labor organization over terms in a CBA.  The court cannot say on the record before this court that the LMRA is inapplicable.

First, the LMRA is not limited to disputes over CBAs. *See McNealy v. Caterpillar, Inc.*, 139 F.3d 1113, 1121 (7th Cir. 1998) ("Section 301 is not just limited to formal CBAs.  Instead, it encompasses any agreement between employers and labor organizations significant to the maintenance of labor peace between them." (quotation marks and citation omitted)); *Alvares v. Erickson*, 514 F.2d 156, 161 (9th Cir. 1975) ("Separate documents are frequently used to define the rights and obligations contemplated in a single conceptual contract.  That the parties here intended the trust agreement to form 'part and parcel' of the collective bargaining contract is evident.  We therefore conclude that the word 'contract' as it appears in

14

§ 301(a) encompasses the provisions of a welfare trust, such as
this, established as a supplement to and referred to in a
collective bargaining agreement.  The two together are the
'contract.'"), *disapproved of on other grounds by Local 144
Nursing Home Pension Fund v. Demisay*, 508 U.S. 581 (1993).  It is
not at all clear from the record that the Training Fund
contemplated by the CBA should not be considered part of a CBA
for purposes of § 301(a).

        Second, while there is no dispute that § 301(a) applies
to contracts between labor organizations and employers, the
record does not establish that this matter is purely a contract
dispute between trustees.  Instead, the Complaint names Sheet
Metal Workers International, Local 293, AFL-CIO, (a union) as a
Plaintiff and Sheet Metal Contractors Association (an association
of employers) as a Defendant.  Under Ninth Circuit precedent,
"jurisdiction is not dependent upon the parties to the suit but
rather the nature or subject matter of the action.  Jurisdiction
exists as long as the suit is for violation of a contract between
a union and employer even if neither party is a union or an
employer."  *Painting & Decorating Contractors Ass'n of
Sacramento, Inc. v. Painters & Decorators Joint Comm. of E. Bay
Ctys., Inc.*, 707 F.2d 1067, 1071 (9th Cir. 1983) (quotation marks
and citation omitted).  "All that is required for jurisdiction to
be proper under § 301(a) is that the suit be based on an alleged

15

breach of contract between an employer and a labor organization and that the resolution of the lawsuit be focused upon and governed by the terms of the contract."  Here, the court is being asked to examine an alleged refusal to comply with an arbitration provision that appears to take its language from § 302(c) of the LMRA, 29 U.S.C. § 186(c)(5), and involves a CBA between a union and an association of employers.

Defendants argue that the "nature or subject matter" in this case is not a dispute between an employer and a labor organization and is instead in the nature of a motion to compel arbitration of a deadlocked vote.  *See* ECF No. 34, PageID # 154.  That is not a relevant distinction here.  Paragraph 19 of the Complaint alleges that section 6 of the trust agreement provides that, in the event of a deadlocked vote, the Union and the Association shall select a neutral arbitrator to resolve the deadlock.  Paragraphs 20 and 21 of the Complaint then allege that the Union demanded arbitration of the deadlocked vote, but the Association refused.  *See* ECF No. 1, PageID # 6.  Paragraph 26 of the Complaint then seeks to require arbitration pursuant to § 301 of the LMRA.  Read broadly, Union Plaintiffs allege that they have a contract with Association Defendants, that Association Defendants qualify as employers for purposes of § 301 of the LMRA, and that Association Defendants are breaching this contract by refusing to arbitrate pursuant to its terms.  Thus, it appears

16

that Union Plaintiffs are asserting a nonfrivolous claim under § 301 of the LMRA that provides this court with subject matter jurisdiction with respect to the claims asserted in the Complaint.  Even if Plaintiffs are ultimately unsuccessful on their LMRA claim, this court has subject matter jurisdiction with respect to adjudicating the claim.

IV.       **BECAUSE THE COMPLAINT ASSERTS A NONFRIVOULUS CLAIM SEEKING TO COMPEL ARBITRATION UNDER THE FAA, DISMISSAL IS INAPPROPRIATE.**

  A.    **Rule 12(b)(6) Governs Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted.**

Defendants have also moved to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory.  *See Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988) (*citing Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir. 1984)).  To survive a Rule 12(b)(6) motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does

17

not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").

The court takes all allegations of material fact as true, construes them in the light most favorable to the nonmoving party, and then evaluates whether the complaint "state[s] a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. *Sprewell*, 266 F.3d at 988.

The court's review is generally limited to the contents of the complaint. *See Sprewell*, 266 F.3d at 988; *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996). If matters outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for summary judgment. *See Keams v. Tempe Tech. Inst., Inc.*, 110 F.3d 44, 46 (9th Cir. 1997); *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996). The court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters

18

of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9ᵗʰ Cir. 2003).  Here, the court does not consider the documents attached to the Motion and Opposition to adjudicate the motion to dismiss under Rule 12(b)(6).  Instead, the court limits its analysis to the allegations contained in the Complaint.

### B.   Defendants' Motion To Dismiss under Rule 12(b)(6) is Denied.

The purpose of the FAA is to advance the federal policy favoring arbitration.  *See Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9ᵗʰ Cir. 2008).  Another "overarching purpose of the FAA is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings."  *See Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 825 (9ᵗʰ Cir. 2019) (quotation marks, citation, and alterations omitted).  The FAA's provisions therefore reflect a "liberal federal policy favoring arbitration."  *Id.* (*quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

As noted earlier in this order, Association Defendants view the Complaint as akin to a motion to compel arbitration. The Ninth Circuit has recently explained:

> under the FAA's procedural framework, "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof."  9 U.S.C. § 4.  "In applying this language, district

> courts rely on the summary judgment standard
> of Rule 56 of the Federal Rules of Civil
> Procedure." *Hansen v. LMB Mortg. Servs.,*
> *Inc.*, 1 F.4th 667, 670 (9th Cir. 2021).  As a
> result, "a court is not authorized to dispose
> of a motion to compel arbitration until after
> [material] factual disputes have been
> resolved." *Id.* at 671.

*Knapke v PeopleConnect, Inc.*, 2022 WL 2336657, at *3 (9th Cir.
June 29, 2022).

Arbitration is a matter of contract, meaning that "a
party cannot be required to submit to arbitration any dispute
which he has not agreed so to submit." *Howsam v. Dean Witter
Reynolds, Inc.*, 537 U.S. 79, 83 (2002).  While there is a
"liberal federal policy" favoring arbitration agreements, *see
id.*, that policy was intended "'to overrule the judiciary's
longstanding refusal to enforce agreements to arbitrate and to
place such agreements upon the same footing as other contracts.'"
*Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022) (quoting
*Granite Rock Co. v. Teamsters*, 561 U.S. 287, 302 (2010)).  Put
another way, "[t]he policy is to make arbitration agreements as
enforceable as other contracts, but not more so." *Id.* (quotation
marks and citation omitted).  This means that "a court must hold
a party to its arbitration contract just as the court would to
any other kind.  But a court may not devise novel rules to favor
arbitration over litigation." *Id.*

"'Generally, a court must determine two issues before

deciding whether to compel arbitration: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute.'" *Knapke*, 2022 WL 2336657, at *3 (quoting *Zoller v. GCA Advisors, LLC*, 993 F.3d 1198, 1201 (9th Cir. 2021)).

The arbitration agreement before this court states: "If the number of votes on any matter is deadlocked, the matter **may** be submitted to an impartial umpire mutually agreed upon by the Union and the Association."  Complaint ¶ 7, ECF No. 1, PageID # 3 (emphasis added).  Defendants argue that the use of the word "may" indicates that the arbitration clause is permissive and only applies when both parties agree to arbitration.  Defendants therefore seek dismissal, arguing that because they do not consent to arbitration of the deadlocked vote, this court cannot compel arbitration.

This court has admittedly recently construed the word "may" in an insurance policy as permissive.  *See QBE Specialty Insurance Company v. Uchiyama*, et al., 2023 WL 6796159, at *11 (D. Haw. Oct. 13, 2023).  As this court noted in *QBE*, "A plain reading of the term 'may' is that it is 'used to indicate possibility or probability.'" *Id.* (citing Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/may). However, as is almost always the case, the meaning of a word is greatly affected by the context in which it is used.

21

Numerous courts have determined that the use of permissive language such as "may" in arbitration clauses does not make arbitration optional.

For example, in *Chauffeurs, Teamsters and Helpers Local Union No. 171 v. Blue Ridge Transfer Co.*, 1990 WL 483667, at *5 (W.D. Va. Oct. 10, 1990), *aff'd*, 952 F.2d 395 (4ᵗʰ Cir. 1991), the court examined the following arbitration language: "In the case of a deadlock and the Company and Union cannot come to an agreement, the case may be submitted to arbitration within (10) days." Notwithstanding the use of the word "may," the court ruled that the "plain reading of this contract provision demonstrates that the parties envisioned the use of arbitration to settle any contractual disputes." *Id.*

The Fifth Circuit interpreted language providing that "If the Union and the Company fail to agree, the dispute may be submitted to the arbitration and the decision of the arbiter shall be final." *Deaton Truck Line, Inc. v. Loc. Union 612, Affiliated with Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 314 F.2d 418, 421 (5ᵗʰ Cir. 1962). The Fifth Circuit rejected the argument that the word "may" prevented arbitration from being compulsory or obligatory, ruling instead that it "should be construed to give either aggrieved party the option to require arbitration." *Id.* at 422.

22

The Fourth Circuit has similarly ruled that the use of "may" in the arbitration context does not render the provision permissive, rather than obligatory:

> The next argument of Miss Austin is that arbitration of her Title VII and disability claims is permissive rather than mandatory. She relies on Section 1, Article 32 of the collective bargaining agreement which states that "[a]ll disputes not settled pursuant to the procedures set forth in Article 31, Grievance Procedures, may be referred to arbitration." She takes the position that the use of the word "may" as just stated makes arbitration permissive rather than obligatory. We are of opinion, however, that the purpose of the word "may" in this section of the collection bargaining agreement is to give an aggrieved party the choice between arbitration and abandonment of his claim, he "may" either arbitrate or abandon the claim. The interpretation urged by Miss Austin would render the arbitration provision meaningless for all practical purposes. If the parties to such an agreement intended for arbitration to be permissive, there would be no reason to include Article 32, the arbitration provision in the contract, for the parties to an existing dispute could always voluntarily submit it to arbitration.

*Austin v. Owens-Brockway Glass Container, Inc.*, 78 F.3d 875, 879 (4th Cir. 1996).

The Eighth Circuit reached a similar conclusion in *American Italian Pasta Co. v. Austin Co.*, 914 F.2d 1103, 1103 (8th Cir. 1990). The parties in that case had agreed to use their best efforts to settle disputes. Their agreement then provided, "If both parties agree that a dispute or disagreement is of such nature that it cannot be settled as provided for

23

above, then such dispute or disagreement may be submitted to arbitration in accordance with the Rules of The American Arbitration Association in which event, the decision of the arbitrators shall be final and binding upon the parties." *Id.* at 1104.  The Eighth Circuit ruled that "the structure and language of the contract reflect that Austin and American Pasta intended arbitration to be mandatory." *Id.*

        *Erickson v. Aetna Health Plans of California, Inc.*, 71 Cal. App. 4th 646 (Ct. App., 4th Dist. Div. 2, 1999), cited with approval in an unpublished decision by the Ninth Circuit, *Kropke v. Dunbar*, 766 F. App'x 497, 499 (9th Cir. 2019), similarly construed an arbitration provision that stated that an insured "may request" binding arbitration.  *Erickson* ruled that under that permissive language, an insured could skip any further review and accept the proposed resolution of a grievance panel; alternatively, the insured "may" seek arbitration.  *Id.* at 647. In reaching that decision, the California court examined *Service Employees International Union, Local 18 v. American Building Maintenance Co.*, 29 Cal. App. 3d 356 (1972), which held that an arbitration clause using "may" provided for mandatory rather than consensual arbitration because the parties needed no agreement allowing them to agree to arbitrate in the absence of a contract provision.  According to *Erickson*, *Service Employees* noted that interpreting "may" in the arbitration clause as requiring only

consensual arbitration "would make the provision of little
purpose."  71 Cal. App. 4th at 657.

Other than citing *Erickson* with approval in *Kropke*, the
Ninth Circuit has not addressed the use of "may" in the
arbitration context.  *Kropke* itself is of limited utility on the
issue.  The arbitration language in that case stated that a
dispute "may be submitted to an arbitrator, if requested in
writing by either party, for binding determination."  *Kropke v.*
*Dunbar*, 2017 WL 6884380, at *2 (C.D. Cal. Sept. 1, 2017).  The
language in *Kropke* therefore expressly allowed "either party" to
request binding arbitration.

Nevertheless, the above case law, which has not been
discussed by any party in this case, weighs heavily against
dismissal for failure to state a claim.  Here, the language sets
forth a procedure for breaking a deadlocked vote.  Such a
procedure is especially important because the number of Union
Trustees is the same as the number of Association Trustees.  In
the absence of evidence to the contrary, to rule that either
group could prevent arbitration by refusing to agree to it would
frustrate the purpose of the provision on how to settle a
deadlocked vote.  Defendants' argument that the word "may"
requires all parties to agree to arbitration would make a nullity
of the very clause evidencing the parties' intent to have a
procedure to break deadlocked votes.  In short, there would be no

way to break the deadlock, and a deadlock would instead represent the failure of a motion to carry by a majority vote.

Although contracting parties are generally free to establish a majority procedure such that a deadlock means a motion does not carry, that does not appear to be what was contemplated in this case.  As noted earlier, § 302(c) of the LMRA restricts certain financial transactions between management and labor.  However, the law provides for exceptions to that restriction.  Financial transactions are allowed if they involve money or another thing of value paid to a trust fund pursuant to a written agreement provided that employees and employers are equally represented in the administration of the fund.  By statute, for financial transactions to be permitted in connection with such funds, any deadlock between employer and employee groups on the administration of such funds must be subject to an agreement that

> provides that the two groups **shall** agree on an impartial umpire to decide such dispute, or in event of their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office.

29 U.S.C. § 186 (c)(5) (emphasis added).  The use of "shall" in § 302(c)(5) suggests that Defendants' reliance on the word "may"

26

as permissive could cause the Training Fund agreement to violate § 302(c)(5).

While the arbitration language could have been clearer, its use of "may" is not grounds for dismissal on the record presently before this court.  Defendants' motion is denied given Defendants' failure to meet their burden as movants.

**V.        CONCLUSION.**

For the foregoing reasons, the motion to dismiss is denied.  Given the reasoning set forth above, Defendants' additional request that Plaintiffs file a more definite statement is also denied.

The parties are ordered to confer on the process that should be followed in this case as it moves forward and to provide this court with the results of their discussion no later than November 8, 2023.

It is so ordered.

DATED: Honolulu, Hawaii, October 26, 2023.



                              /s/ Susan Oki Mollway
                              Susan Oki Mollway
                              United States District Judge

*Tolentino, et al., v Saito, et al.*, Civ. No. 23-00280 SOM/KJM; ORDER DENYING MOTION TO DISMISS COMPLAINT OR FOR A MORE DEFINITE STATEMENT